**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

--------------------------------------------------------------X

JOSEPH C. ELFENBEIN,

                               Plaintiff,

         -against-

BRONX LEBANON HOSPITAL CENTER,
IRA KIRSCHENBAUM, and STEVEN C.
ANDERMAN,

                          Defendants.

--------------------------------------------------------------X

08 Civ. 5382 (RMB) (JCF)

**DECISION & ORDER**

## I.    Introduction

On or about September 3, 2008, Joseph C. Elfenbein ("Plaintiff" or "Elfenbein") filed a First Amended Complaint ("Complaint") against Bronx Lebanon Hospital Center ("Bronx Lebanon" or "Hospital"), Chairman of the Department of Orthopaedic Surgery Ira Kirschenbaum ("Kirschenbaum"), and Chief Operating Officer Steven C. Anderman ("Anderman") (collectively, "Defendants"), alleging, among other things, that "the termination of Plaintiff's employment was due to his age and/or [a] perceived disability." (Compl. ¶ 20; see id. ¶¶ 6–11.) Plaintiff asserts claims against Bronx Lebanon under the Age Discrimination in Employment Act, 29 U.S.C. § 623 et seq. ("ADEA") and the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA").  (See Compl. ¶¶ 31–63.)  Plaintiff also asserts claims against Defendants under the New York State Human Rights Law, N.Y. Exec. Law § 290 et seq. ("NYSHRL") and the New York City Human Rights Law, N.Y. City Admin. Code § 8-101 et seq. ("NYCHRL"). (See Compl. ¶¶ 31–63.)

On April 1, 2009, Defendants moved for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), arguing, among other things, that:  (1)

Plaintiff "failed to prove . . . his <u>prima facie</u>" age discrimination claim because "there is no proof

of an inference of discrimination" and failed to show that "the Hospital's legitimate reason for its

employment decision was a pretext for discrimination"; and (2) Plaintiff's disability

discrimination claims fail because he "has admitted that he has no disability" and the "record is

devoid of any evidence to support a perceived disability claim." (Mem. in Supp. of Defs.' Mot.

for Summ. J., dated Apr. 1, 2009 ("Defs. Mem."), at 1, 5, 9, 11.)

On April 22, 2009, Plaintiff filed an Opposition, arguing, among other things, that: (1)

Plaintiff established a <u>prima facie</u> case of age discrimination because Plaintiff "was terminated

and the Defendant Hospital immediately hired only very young . . . inexperienced surgeons in

[his] place" and "a rational jury must conclude that the motives for [Plaintiff's] termination were

unlawful"; and (2) "Plaintiff has satisfied the criteria to place the issue of disability

discrimination before the jury" because "mobility disability based upon the use of a cane for

walking rises to the level of a recognized disability" and "Defendants were of knowledge of the

mobility disability so as to impute knowledge of a perceived disability." (Pl. Mem. in Opp'n to

Defs.' Mot. for Summ. J., dated Apr. 22, 2009 ("Pl. Opp'n"), at 10–12, 15.)

On May 1, 2009, Defendants filed a reply. (<u>See</u> Reply.) The parties waived oral

argument.

**For the reasons set forth below, Defendants' motion for summary judgment is**

**granted.**

## II.    Background

Bronx Lebanon hired Plaintiff as an orthopedic surgeon beginning in or around August

2005. (<u>See</u> Defs.' Local Rule 56.1 Statement, dated Apr. 1, 2009 ("Defs. Rule 56.1"), Ex. E (Tr.

of Dep. of Joseph C. Elfenbein, dated Feb. 4, 2009 ("Elfenbein Dep.")), at 45:10-11; Defs. Rule

56.1 ¶ 4; Pl.'s Resp. to Defs.' Rule 56.1 Statement with Counterstatement Pursuant to Rule 56.1(b), dated Apr. 22, 2009 ("Pl. Rule 56.1"), ¶ 4.) At the time, Plaintiff was 68 years of age. (Defs. Rule 56.1 ¶ 4; Pl. Rule 56.1 ¶ 4; Elfenbein Dep. at 72:15-20.) Plaintiff's "at-will" employment contract provided that the "Agreement may be terminated without cause by [Plaintiff] or Hospital upon no less than three (3) months prior written notice." (Defs. Rule 56.1, Ex. C, ¶ 12; see Defs. Rule 56.1 ¶ 3; Pl. Rule 56.1 ¶ 3.)

When Plaintiff was hired to join the Division of Orthopedics, the Division then consisted of Dr. Geoffrey Phillips ("Dr. Phillips"), who was the Division's head, and Plaintiff. (Defs. Rule 56.1 ¶ 7; Pl. Rule 56.1 ¶ 7; Elfenbein Dep. at 48:16-20.)[1] A third orthopedic physician, Dr. Andrew Haas ("Dr. Haas"), was subsequently hired, in or around August 2007. (Defs. Rule 56.1 ¶ 7; Pl. Rule 56.1 ¶ 7.) Plaintiff did "not have fellowship training in any surgical specialty." (Defs. Rule 56.1 ¶ 34; Pl. Rule 56.1 ¶ 34.) Dr. Phillips and Dr. Haas had fellowship training in Sports Medicine. (Defs. Rule 56.1 ¶ 8; Pl. Rule 56.1 ¶ 8; Elfenbein Dep. at 92:6-8.)

On or about April 12, 2006, Plaintiff took a leave from work to have back surgery and he returned to work approximately seven weeks later, i.e., on or about June 2, 2006. (Defs. Rule 56.1 ¶ 9; Pl. Rule 56.1 ¶ 9.) Plaintiff returned to work "without restriction" and "with full clearance by his and the Hospital's Employee Health Services' physicians to return to work without any limitation." (Defs. Rule 56.1 ¶ 9; Pl. Rule 56.1 ¶ 9.) Plaintiff, following his surgery, was "not limited in any capacity, including his ability to work; he did not inform anyone that he had any disability upon his return to work; and, he did not request any accommodation of any kind." (Defs. Rule 56.1 ¶ 10; Pl. Rule 56.1 ¶ 10.) Plaintiff testified at his deposition that

---

[1]     It appears that the Hospital renamed its Division of Orthopedics and began calling it the Department of Orthopaedic Surgery in or about February 2008. (Affidavit of Ira Sturm, dated Apr. 21, 2009 ("Sturm Aff."), Ex. A, at 1.) The parties appear to use the terms "orthopedic" and "orthopaedic" interchangeably.

after his surgery he walked "with a cane," presumably because he had "a problem with balance." (Elfenbein Dep. at 75:5-6, 75:17-22.)

Plaintiff's 2007 evaluation for recertification/recredentialing of his privileges "rated his performance as 'satisfactory' and . . . [Plaintiff] was not the subject of any disciplinary actions by the Hospital." (Pl. Rule 56.1 ¶ 45; Defs.' Resp. to Pl.'s Local Rule 56.1 Opp'n and Counterstatement, dated Apr. 29, 2009 ("Defs. Rule 56.1 Resp."), ¶ 45.)

According to Defendants, on or about February 1, 2008, Bronx Lebanon "decided to exercise its right to terminate [Plaintiff's] employment without cause, upon three months prior notice." (Defs. Rule 56.1, Ex. M (Ltr. from Steven C. Anderman to Plaintiff, dated Feb. 1, 2008 ("Anderman Ltr.").) Plaintiff remained employed until on or about February 29, 2008. (See Anderman Ltr.) He was 71 years old when he was terminated. (See Elfenbein Dep. at 72:14-17.) Defendant Anderman bore the primary decision-making responsibility for terminating Plaintiff's employment. (Defs. Rule 56.1 ¶ 25; Pl. Rule 56.1 ¶ 25.) At the time of Plaintiff's termination, "Mr. Anderman was in [Plaintiff's] protected age category." (Defs. Rule 56.1 ¶ 25; Pl. Rule 56.1 ¶ 25.)

In or about February 2008, Bronx Lebanon hired Dr. Kirschenbaum as Chairman of the Department of Orthopaedic Surgery. (Defs. Rule 56.1, Ex. J, at 1.) Dr. Kirschenbaum hired as orthopedic surgeons Dr. Sepidah Badhian, in or after February 2008, and Dr. Mark Schwartz, in or after March 2008. (Defs. Rule 56.1, Ex. F (Tr. of Dep. of Ira Kirschenbaum, dated Dec. 12, 2008 ("Kirschenbaum Dep.")) at 54:17-20, 68:12-17.) According to Plaintiff, Dr. Schwartz and

4

Dr. Badhian – "were significantly younger than Plaintiff, each with short term or no practice experience." (Pl. Rule 56.1 ¶ 60.)[2]

"[N]o Hospital employee ever said or did anything to lead [Plaintiff] to believe that the Hospital considered [Plaintiff] to be disabled or considered his alleged disability when making the decision to terminate his employment." (Defs. Rule 56.1 ¶ 29; Pl. Rule 56.1 ¶ 29.) "The Hospital maintains well-established anti-discrimination policies and complaint procedures distributed to each employee including [Plaintiff]; [Plaintiff] never filed any complaints of discrimination during his entire employment tenure." (Defs. Rule 56.1 ¶ 28; Pl. Rule 56.1 ¶ 28.) "At no time after [Plaintiff's] termination did he seek reemployment with the Hospital." (Defs. Rule 56.1 ¶ 31; Pl. Rule 56.1 ¶ 31.) But, "[a]fter termination and to the present day, [Plaintiff] retains his admitting and surgical privileges with the Hospital, and is thus fully able to admit and operate on patients at the Hospital." (Defs. Rule 56.1 ¶ 27; Pl. Rule 56.1 ¶ 27.)

On or about March 31, 2008, Plaintiff filed a charge of age and disability discrimination ("EEOC Complaint") against Bronx Lebanon with the U.S. Equal Employment Opportunity Commission ("EEOC"), which alleged, among other things, that "the termination of Dr. Elfenbein was due to his age and/or the perceived disability" and "[f]ollowing the Hospital's termination of Dr. Elfenbein's employment, the Hospital continued to employ in its Department of Orthopaedic Surgery only attending physicians who were younger than Dr. Elfenbein." (See Compl. ¶ 4; Defs. Rule 56.1, Ex. O (Charge of Discrimination, No. 520-2008-02780, dated Mar. 25, 2008), ¶¶ 11, 15.) On or about May 23, 2008, the EEOC closed Plaintiff's case, without addressing the merits, and issued a Notice of Right to Sue letter to Plaintiff. (Compl. ¶ 5; Defs.

---

[2]    Defendants stated that Dr. Schwartz was "approximately 35," and Dr. Badhian was "about 34, 35" or "in her 40s." (Kirschenbaum Dep. at 55:22-56:2; id. at 59:11-12; Anderman Dep. at 27:7-10.)

Rule 56.1, Ex. Q (Notice of Right to Sue, dated May 23, 2008).)  Apparently after the case was

closed, on or about May 27, 2008, Bronx Lebanon filed a verified answer to the EEOC

Complaint.  (Defs. Rule 56.1, Ex. O (Verified Answer, EEOC Charge No. 520-2008-02780,

dated May 27, 2008 ("EEOC Answer")).)

Defendant Kirschenbaum testified at his deposition that in or about June or July 2008 he

terminated Dr. Haas because "he was not fully on board with the way we wanted to give patient

service, the way we wanted to run the surgical schedule, the expectations I had for interactions

with the staff."  (Kirschenbaum Dep. at 52:10-15, 53:22-24, 54:1-7.)

### III.    Legal Standard

"Summary judgment is . . . appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a

matter of law.'"  Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting Fed. R.

Civ. P. 56(c)).  In ruling on a summary judgment motion, the Court must "assess the record in

the light most favorable to the non-movant and . . . draw all reasonable inferences in [the non-

movant's] favor."  Id. (citation omitted).  A "plaintiff must provide more than conclusory

allegations of discrimination to defeat a motion for summary judgment," Schwapp v. Town of

Avon, 118 F.3d 106, 110 (2d Cir. 1997), because "allowing 'a party to defeat a motion for

summary judgment by offering purely conclusory allegations of discrimination, absent any

concrete particulars, would necessitate a trial' in all employment discrimination actions."  Deebs

v. Alstom Transp., Inc., No. 08 Civ. 2602, 2009 WL 3004088, at *2 (2d Cir. Sept. 21, 2009)

(quoting Meiri v. Dacon, 759 F.2d 989, 998 (2d Cir. 1985)).  Thus, "[s]ummary judgment is

appropriate even in discrimination cases, for . . . the salutary purposes of summary judgment –

avoiding protracted, expensive and harassing trials – apply no less to discrimination cases than to . . . other areas of litigation." Weinstock, 224 F.3d at 41 (internal quotation omitted).

Employment discrimination claims are subject to the burden-shifting analysis outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Sgarlata v. Viacom, Inc., Nos. 02 Civ. 7234, 03 Civ. 5228, 2005 WL 659198, at *4 (S.D.N.Y. Mar. 22, 2005); see also Cruz v. Coach Stores, Inc., 202 F.3d 560, 567 (2d Cir. 2000). "[T]he employee bears the initial burden of producing evidence sufficient to support a prima facie case of discrimination." Id. The burden then "shifts to the [employer] to articulate some legitimate, nondiscriminatory reason for the . . . termination." Farias v. Instructional Sys., Inc., 259 F.3d 91, 98 (2d Cir. 2001). "[O]nce the employer has proffered its nondiscriminatory reason, the employer will be entitled to summary judgment . . . unless the plaintiff can point to evidence that reasonably supports a finding of prohibited discrimination." James v. N.Y. Racing Ass'n, 233 F.3d 149, 154 (2d Cir. 2000).

### IV.    Analysis

### (1)    Federal Age Discrimination Claim

### Prima Facie Case

"In order to establish a prima facie case . . . in violation of the ADEA, a plaintiff must show that (1) at the time of discharge [he] was at least 40 years of age, (2) [his] job performance was satisfactory, (3) [he] was discharged, and (4) [his] discharge occurred under circumstances giving rise to an inference of discrimination on the basis of age." Wayne v. Principi, No. 01 Civ. 941, 2004 U.S. Dist. LEXIS 3141, at *29 (S.D.N.Y. Mar. 3, 2004) (quoting Grady v. Affiliated Cent. Inc., 130 F.3d 553, 559 (2d Cir. 1997)).

The Court finds that Plaintiff has "satisfied the first three prongs of the prima facie

standard under <u>McDonnell Douglas</u>" with regard to his age discrimination claim.  <u>Murray v.</u>

<u>Visiting Nurse Servs. of N.Y.</u>, 528 F. Supp. 2d 257, 268 (S.D.N.Y. 2007).  It is undisputed that

Plaintiff was discharged; that he was 71 years of age at the time of termination; and that he had

received a "satisfactory" job rating.  (<u>See</u> Anderman Ltr.; Elfenbein Dep. at 72:14-17; Compl. ¶

14; Answer ¶ 14; Pl. Rule 56.1 ¶ 45; Defs. Rule 56.1 Resp. ¶ 45); <u>de la Cruz v. N.Y.C. Human</u>

<u>Res. Admin. Dep't of Soc. Servs.</u>, 82 F.3d 16, 20–21 (2d Cir. 1996).

        Regarding the fourth prong, Defendants argue, among other things, that Plaintiff is

precluded from establishing any "inference of age discrimination," because, among other

reasons:  (1) Plaintiff "was hired by the Hospital when he was 68"; (2) Defendant "Anderman,

the primary decision maker, was within [Plaintiff's] protected class at the time of [Plaintiff's]

discharge"; (3) "the Hospital hired [Defendant] Kirschenbaum when [in or about February 2008]

he was in the protected class"; (4) "the Hospital offered employment positions to physicians aged

51, 58, and 68 in the Department [of Orthopaedic Surgery] subsequent to Plaintiff's discharge";

and (5) the "record shows that even if [Plaintiff] were substantially younger . . . , he would have

been discharged because he did not have a high volume of surgery and he did not have

fellowship training in a surgical specialty."  (Defs. Mem. at 1, 6; Reply at 8.)

        Plaintiff counters that "an inference of age discrimination" exists because, among other

reasons, Plaintiff "was terminated and the Defendant Hospital immediately hired only very

young . . . inexperienced surgeons in [his] place."  (Pl. Opp'n at 12.)

        Absent direct proof, circumstances giving rise to an inference of discrimination may

include "preferential treatment given to employees outside the protected class[,]" <u>Chertkova v.</u>

<u>Conn. Gen. Life Ins. Co.</u>, 92 F.3d 81, 91 (2d Cir. 1996), "the fact that [a] plaintiff was replaced

by someone substantially younger," <u>Woodman v. WWOR-TV, Inc.</u>, 411 F.3d 69, 76 (2d Cir.

8

2005) (internal quotation omitted), evidence of "actions or remarks made by decisionmakers that could be viewed as reflecting a discriminatory animus," and "the timing or sequence of events leading to [a] plaintiff's termination." Chertkova, 92 F.3d at 91. "Whatever evidentiary route [a] plaintiff chooses to follow," he "must offer admissible evidence [that] shows circumstances that would be sufficient to permit a rational finder of fact to infer a discriminatory motive." Wayne, 2004 U.S. Dist. LEXIS 3141, at *31–*32 (internal quotations and citations omitted).

There is some evidence in the record to support an inference of discrimination at this stage of the analysis, i.e., that Plaintiff was replaced with one or more younger orthopedic surgeons.[3] (See Anderman Dep. at 27:7-10 ("I would believe . . . Dr. [Badhian] is in her 40s . . . ."); Kirschenbaum Dep. at 59:11-12 ("I think [Dr. Badhian] is about 34, 35."); id. at 55:22-56:2 ("I think [Dr. Schwartz was] approximately 35, maybe plus or minus a few years.")); see also Brooks v. Leake & Watts Org., Inc., No. 02 Civ. 9865, 2005 WL 1875772, at *8 (S.D.N.Y. Aug. 2, 2005) (where a replacement was at least ten years younger than a plaintiff it was "sufficient to meet the minimal burden plaintiff carries to show a prima facie case of discrimination").

Although Plaintiff's evidence is wanting, the Court will assume that Plaintiff has "sufficiently set forth a prima facie claim of age discrimination." Fisher v. Vassar College, 66

---

[3]     At the same time, despite four months of discovery, Plaintiff's Opposition and Rule 56.1 Response and Counterstatement fail to cite (admissible) evidence concerning the ages, professional backgrounds, positions (titles), and/or dates of hire of surgeons alleged to have replaced Plaintiff.  See McAfee v. Law Firm of Forster & Garbus, No. 06 Civ. 2925, 2008 WL 3876079, at *2 (E.D.N.Y. Aug. 18, 2008); Dodd-White v. Lenox Hill Hosp., No. 02 Civ. 5749, 2006 WL 305472, at *3 (S.D.N.Y. Feb. 9, 2006).  In alleging that "two surgeons hired by Dr. Kirschenbaum in the Department were significantly younger than Plaintiff, each with short term or no practice experience," (Pl. Opp'n at 8), Plaintiff relies solely on the (conclusory) affirmation of Dr. Haas, dated April 6, 2009; Dr. Haas's affirmation does not reflect any direct personal knowledge and appears to be based on "hearsay."  Patterson v. County of Oneida, N.Y., 375 F.3d 206, 222 (2d Cir. 2004); (see Affirmation of Andrew Haas, M.D., dated Apr. 6, 2009 ("Haas Affirmation"), ¶¶ 6–8.)

F.3d 379, 409 (2d Cir. 1995).

**Defendants' Non-Discriminatory Reasons**

Defendants have clearly articulated one or more legitimate, non-discriminatory reasons for Plaintiff's termination. Wellesley v. Debevoise & Plimpton LLP, No. 08 Civ. 1360, 2009 WL 3004102, at *1 (2d Cir. Sept. 21, 2009). Specifically, Defendants contend that the Hospital was restructuring the Division of Orthopedics, "by increasing operating room volume" in order to avoid outsourcing surgical procedures and by "recruit[ing] surgeons with the specialties (i.e., spinal surgery) needed by its community." (Defs. Mem. at 13; Defs. Rule 56.1 ¶¶ 15–16; see Anderman Dep. at 15:15-18, 16:4-8, 23:9-13, 23:18-24, 31:4-9, 39:17-24.) Defendants contend that Plaintiff's employment was terminated "due to his low surgical volume and lack of specialized surgical training." (Defs. Mem. at 13; Defs. Rule 56.1 ¶¶ 15–16; see Anderman Dep. at 15:15-18, 16:4-8, 23:9-13, 23:18-24, 31:4-9, 39:17-24.) "The restructuring of operations has repeatedly been recognized by the courts as a legitimate, non-discriminatory reason for termination." Olle v. Columbia Univ., 332 F. Supp. 2d 599, 616–17 (S.D.N.Y. 2004), aff'd, 136 Fed. App'x 383 (2d Cir. 2005). Defendants' articulated nondiscriminatory reasons for discharging Plaintiff include that his qualifications no longer fit the changing needs of the Hospital. See Mania v. Alper Holdings USA, Inc., No. 95 Civ. 1846, 1996 WL 438162, at *1 (S.D.N.Y. Aug. 5, 1996); (Anderman Dep. at 15:15-18, 16:4-8, 23:9-13, 23:18-24, 31:4-9, 39:17-24.). They have "met [their] burden under the second prong of McDonnell Douglas." Phillips v. Centrix, Inc., No. 07 Civ. 1455, 2009 U.S. Dist. LEXIS 11065, at *8–*9 (D. Conn. Feb. 13, 2009).

**No Pretext Established**

Defendants argue (persuasively) that Plaintiff "has come forward with **no** evidence to

refute the legitimate business reason[s] for the termination of his at-will employment" because, among other reasons:  (i) Plaintiff conceded that Dr. Phillips, not Plaintiff, was "the most productive of the three surgeons in the Department"; and (ii) whether "Plaintiff could have gotten [surgical specialty] training is irrelevant to the fact that the Hospital's restructuring plan sought such expertise for the Department." (Defs. Mem. at 14; Reply at 7–8 (emphasis in original).)

Plaintiff counters (unpersuasively) that a "reasonable jury could rightfully reject Defendants' proffered explanation[s]," because, among other reasons:  (i) Defendant "Anderman's belated explanation as to the so-called real reason for the termination, was premised upon false statistical evidence," and "in the context of a reformation of the Department, Dr. Elfenbein, the most senior and the most productive of the three surgeons in the department, is the only one summarily terminated, without explanation or even an opportunity to perform under the 'new model'"; and (ii) while Defendant Kirschenbaum "denies that he required 'specialty fellowships,' as a condition of employment, such is contradicted by Dr. Haas." (Pl. Opp'n at 14–16.)

As Defendants have articulated legitimate, non-discriminatory reasons for Plaintiff's termination, Olle, 332 F. Supp. 2d at 617, any presumption of discrimination raised "by the prima facie case drops out of the picture, and [Plaintiff], in order to defeat summary judgment, must present evidence sufficient to allow a rational factfinder to infer that the employer was actually motivated in whole or in part by age discrimination." Grady, 130 F.3d at 559–60 (internal quotations omitted). "In determining whether an employer's explanation for an adverse employment action is pretext, 'the inquiry is directed toward determining whether the articulated purpose is the actual purpose for the challenged employment-related action.'" Mincey v. Univ.

11

of Rochester, 262 Fed. App'x 319, 321 (2d Cir. 2008) (quoting DeMarco v. Holy Cross High

Sch., 4 F.3d 166, 171 (2d Cir. 1993)).  In evaluating whether any evidence of pretext exists, "it is

not the function of a fact-finder to second-guess business decisions regarding what constitutes

satisfactory work performance." Soderberg v. Gunther Int'l, Inc., 124 Fed. App'x 30, 32 (2d Cir.

2005) (internal quotation omitted) (citing Dister v. Cont'l Group, Inc., 859 F.2d 1108, 1116 (2d

Cir. 1988)).

Defendants offer legitimate, nondiscriminatory business rationales and support for the

decision to terminate Plaintiff's employment, including that "his low surgical volume and lack of

specialized surgical training" were incompatible with the Hospital's plans to restructure the

Division of Orthopedics "by increasing [its] operating room volume" and by "recruit[ing]

surgeons with the specialties (i.e., spinal surgery) needed by its community." (Defs. Mem. at 13;

Defs. Rule 56.1 ¶¶ 15–16.)[4] Plaintiff has proffered no evidence showing that Defendants' stated

reasons are "merely pretextual and that age discrimination was a reason for the adverse

employment action." Concepcion v. Nice Pak Prods., No. 03 Civ. 1894, 2004 U.S. Dist. LEXIS

15873, at *19 (S.D.N.Y. Aug. 16, 2004); see also Scaria v. Rubin, 117 F.3d 652, 654 (2d Cir.

1997) (a plaintiff "must . . . show that the proffered reason was pretextual and that, more likely

than not, the true reason was the illegal discrimination that the plaintiff alleged.").

Plaintiff has failed to produce evidence to counter Defendants' contention that the

---

[4]    Dr. Kirschenbaum testified at his deposition that in implementing the Department of
Orthopaedic Surgery's restructuring/specialization efforts he "hired a hand surgeon, [Dr.
Badhian]"; he hired a "podiatrist, Dr. Neil Blitz," on or about September 1, 2008; and there were
"three spine surgeons [he was] looking at . . . Ernesto Cuartas . . . Derrick Moore, and Joshua
Auerbach." (Kirschenbaum Dep. at 58:20-21; 59:17-19, 68:3-11.)  He also testified that he
offered employment to Dr. Colleen Fay, a 51 year-old surgeon who handled over 350 orthopedic
cases per year; Dr. Anthony Balsano, a 68 year-old surgeon who handled over 200 joint
replacements per year; and Dr. Steven Stuchin, a 58 year-old surgeon.  (Kirschenbaum Dep. at
68:18-20, 68:23-69:2, 69:9-11, 69:18-20, 70:17-24.)

Hospital sought to increase its surgical volume – which the record indicates grew only modestly during the period of Plaintiff's employment – in order to serve the Hospital's changing surgery needs. (See Anderman Dep. at 15:21-16:8 ("[T]he hospital . . . felt . . . that we [were] not meeting the needs of the community with the present structure and organization of orthopedics. The operating room volume . . . in orthopedics hardly had changed in the year or two prior, or the several years prior. And we needed to restructure the department . . . and this was part of that restructuring."); Defs. Rule 56.1, Ex. I ("Surgery Volume Chart") (reflecting an average of 19 orthopedic surgeries per month in the fourth quarter 2006 and an average of 22 orthopedic surgeries per month in 2007)); Abdu-Brisson v. Delta Air Lines, Inc., 239 F.3d 456, 470 (2d Cir. 2001) (plaintiff has "failed to produce any evidence to suggest that [the Hospital's] stated financial rationale was pretextual"). Plaintiff's argument that an undated chart produced by Mr. Anderman "showed, not a stagnation in orthopedic surgeries between 2006 and 2007, but rather a threefold increase in surgeries" is not persuasive because it compares the number of surgeries performed in the last four months of 2006 with all surgeries performed in 2007. (Pl. Opp'n at 16 (citing Surgery Volume Chart)).[5]

And, with respect to Defendants' contention that the Hospital needed to employ surgeons with specialty training that Plaintiff lacked to meet community needs, (Anderman Dep. at 15:21-16:8), Plaintiff conceded at his deposition that he "did not obtain any fellowships in [an] orthopedic surgery specialty," and that, although spine and hand fellowships were available when he finished his orthopedic residency in 1969, he "wasn't interested in either one." (Elfenbein Dep. at 11:13-20, 12:3-11; Defs. Rule 56.1 ¶ 34; Pl. Rule 56.1 ¶ 34.); see also supra

---

[5]    While Plaintiff's Opposition argues that he was "the most productive of the three surgeons," (Pl. Opp'n at 16), Plaintiff conceded at his deposition that he "probably did not," on average, do "more cases per year" than Dr. Phillips, the head of the Division of Orthopedics. (Elfenbein Dep. at 91:23-25).

13

note 4. "[D]ecisions motivated by economic concerns do not violate the ADEA." Criley v.

Delta Air Lines, Inc., 119 F.3d 102, 105 (2d Cir. 1997); (see Defs. Rule 56.1 ¶ 34; Pl. Rule 56.1

¶ 34). "[E]mployment decisions driven by factors that [may be] empirically intertwined with

age are not discriminatory so long as they are motivated by some feature other than the

employee's age." Criley, 119 F.3d at 105 (internal quotation omitted); see Abdu-Brisson, 239

F.3d at 469.[6]

There are also other significant facts in the record that undermine any finding of pretext.

See Chin v. ABN-AMRO N. Am., Inc., 463 F. Supp. 2d 294, 303 (E.D.N.Y. 2006). For

example, at the time he was hired, Plaintiff was 68 and "already a member of the protected

class." Id.; (see Defs. Rule 56.1 ¶ 4; Pl. Rule 56.1 ¶ 4); see also O'Connor v. Viacom

Inc./Viacom Int'l Inc., No. 93 Civ. 2399, 1996 WL 194299, at *7 (S.D.N.Y. Apr. 23. 1996)

("[T]he inference of discrimination is much weaker where the plaintiff employee is well within

the protected class when first hired.") (citing Stanojev v. Ebasco Servs., Inc., 643 F.2d 914, 921

(2d Cir. 1981)), aff'd, 104 F.3d 356 (2d Cir. 1996). Also, invidious discrimination is unlikely

where, as here, "the person who made the termination decision [Mr. Anderman] is in the same

protected class" as Plaintiff. Zuffante v. Elderplan, Inc., No. 02 Civ. 3250, 2004 WL 744858, at

*6 (S.D.N.Y. Mar. 31, 2004); (see Defs. Rule 56.1 ¶ 25 ("[Defendant] Anderman . . . bore the

primary decision-making responsibility for terminating [Plaintiff's] employment, and was in

[Plaintiff's] protected age category."); Pl. Rule 56.1 ¶ 25.)

Plaintiff fails to meet "the ultimate burden of showing that [he] was treated adversely on

---

[6]      Moreover, "[e]mployers . . . have no obligation to explain employment decisions to at-
will employees." Kilpatrick v. Del. County Soc. for Prevention of Cruelty to Animals, 632 F.
Supp. 542, 545 (E.D. Pa. 1986); see also Rivkin v. Coleman, 978 F. Supp. 539, 545 (S.D.N.Y.
1997) (Plaintiff "does not claim that [his] employment with [the Hospital] was anything other
than an employment-at-will, and therefore [he] was subject to termination for any non-
discriminatory reason, or for no reason at all").

account of [his] age." Nieves v. Angelo, Gordon & Co., No. 07 Civ. 2330, 2009 WL 1910970,

at *2 (2d Cir. July 6, 2009); see also Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 91

(2d Cir. 2001) ("The evidence presented by [plaintiff] is not enough to permit a jury to find that

the real reason he was fired was his age. We have repeatedly held that, in the end this burden

rests on the plaintiff, . . . and, as a matter of law, [he] has not met this ultimate burden." (internal

citations omitted)).

#### (2)    Federal Disability Discrimination Claims

Defendants argue, among other things, that "[m]erely using a cane is not considered a

disability under any statute and [Plaintiff] has admitted that he had no disabilities which either

substantially affected any major life activity or affected his normal bodily functions"; and

Plaintiff's "conclusory allegations that other physicians saw him with a cane" and Plaintiff

"'assumed' that they thought he was disabled, are clearly insufficient to prove a perceived

disability claim." (Defs. Mem. at 9–11.)

Plaintiff counters, among other things, that "mobility disability based upon the use of a

cane for walking rises to the level of a recognized disability"; "[e]ven if such did not rise to the

level of a per se disability," Defendants "were of knowledge of the mobility disability so as to

impute knowledge of a perceived disability"; and Defendant Hospital "admitted that Plaintiff

suffers from a statutorily covered disability" by acknowledging in its submission to the EEOC

that Plaintiff "had a disability under the federal and state laws." (Pl. Opp'n at 10–11.)

A plaintiff is "disabled" within the meaning of the ADA if he or she:  (i) has "a physical

or mental impairment that substantially limits one or more of [his] major life activities"; (ii) has

"a 'record' of such an impairment"; or (iii) "is 'regarded as' suffering from a physical or mental

impairment that 'substantially limits one or more of the major life activities,' even if [he] does

not actually suffer from such an impairment." Jacques v. DiMarzio, Inc., 386 F.3d 192, 199 (2d Cir. 2004) (citations omitted). Thus, a plaintiff is disabled if he either suffers from an actual disability under the ADA or if Defendants "perceived [him] as disabled within the meaning of the ADA." Temple v. Bd. of Educ. of City of N.Y., 322 F. Supp. 2d 277, 280–81 (E.D.N.Y. 2004); see Jacques, 386 F.3d at 199.

### (i)     Actual Disability

In determining whether a plaintiff has an actual disability that is protected by the ADA, courts consider: "[i] whether the plaintiff suffered from a physical or mental impairment, [ii] whether the life activity upon which the plaintiff relied . . . constitutes a major life activity under the ADA, and [iii] whether the plaintiff's impairment substantially limited [the] major life activity identified." Jacques, 386 F.3d at 199 (citation and internal quotations omitted). "Courts have placed the bar relatively high when determining when the activity of walking has been substantially limited," as is alleged here. Potenza v. City of N.Y. Dep't of Transp., No. 00 Civ. 0707, 2001 WL 1267172, at *10 (S.D.N.Y. Oct. 23, 2001), aff'd in part, 95 Fed. App'x 390 (2d Cir. 2004).[7]

---

[7]     Defendants' alleged discriminatory termination of Plaintiff occurred on or before February 1, 2008. (Compl. ¶ 18.) "On September 24, 2008, Congress enacted the ADA Amendments Act of 2008, Pub. L. 110-325, 122 Stat. 3553 (2008) [("ADA Amendments Act")], which explicitly rejects as overly narrow . . . [certain] disability standards articulated by the Supreme Court." DeCastro v. Lahood, Nos. 04 Civ. 2129, 05 Civ. 3528, 2009 WL 1067030, at *4 n.7 (E.D.N.Y. Apr. 21, 2009). The ADA Amendments Act, which became effective on January 1, 2009, "does not apply retroactively." Milholland v. Sumner County Bd. of Educ., 569 F.3d 562, 567 (6th Cir. 2009); see Lytes v. DC Water & Sewer Auth., 572 F.3d 936, 940 (D.C. Cir. 2009) ("By delaying the effective date of the [ADA Amendments Act], the Congress clearly indicated the statute would apply only from January 1, 2009 forward."); Caronia v. Hustedt Chevrolet, No. 05 Civ. 3526, 2009 WL 909729, at *8 (E.D.N.Y. Apr. 1, 2009); see also Cody v. County of Nassau, No. 08 Civ. 5127, 2009 WL 2958742, at *3 (2d Cir. Sept. 16, 2009) ("[I]t is unlikely that the ADA Amendments Act . . . applies to conduct that occurred before [its] effective date of January 1, 2009.").

Plaintiff's actual disability claim is dismissed because Plaintiff has failed to provide sufficient (non-conclusory) information to permit a trier of fact to conclude that a physical impairment "substantially limited the major life activity of walking, working, or any other major life activity."[8] Levy ex rel. Levy v. Hustedt Chevrolet, No. 05 Civ. 4832, 2008 WL 5273927, at *6 (E.D.N.Y. Dec. 17, 2008).  Plaintiff offers little or no evidence of the nature or extent of any walking problem and he concedes that "after [his back] surgery he was not limited in **any** capacity, including his ability to work." (Defs. Rule 56.1 ¶ 10 (emphasis added); Pl. Rule 56.1 ¶ 10.)  There is no proof of a substantial limitation of a major life activity.  See Mitchell, 2003 WL 22705121, at *6; Watson v. Arts & Entm't Television Network, No. 04 Civ. 1932, 2008 WL 793596, at *12 (S.D.N.Y. Mar. 26, 2008) ("[T]he need to walk slowly and the inability to walk long distances or for long periods of time . . . do not constitute substantial limits on walking."); see also Mitchell v. Girl Scouts of U.S., No. 98 Civ. 3730, 2003 WL 22705121, at *6 (S.D.N.Y. Nov. 17, 2003) ("Regardless of the extent that plaintiff needs the assistance of a cane, plaintiff does not contend that she is unable to walk, but rather she is unable to do a substantial amount of walking.").  Nor is Plaintiff's contention that he had "to walk with a cane" after his back surgery, presumably because he had "a problem with balance," supported by any medical evidence. (Elfenbein Dep. at 75:17-22.) Plaintiff's "testimony as to the (alleged) limits on his ability to

---

[8]     To prove a prima facie discrimination claim based on an actual disability, a plaintiff must show that:  "[i] the defendant[s] [are] covered by the ADA"; [ii] plaintiff suffers from . . . a disability within the meaning of the ADA"; "[iii] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and [iv] plaintiff suffered an adverse employment action because of his disability or perceived disability." Capobianco v. City of New York, 422 F.3d 47, 56 (2d Cir. 2005). Because Plaintiff has failed to establish that he suffers from a disability within the meaning of the ADA, the Court need not address the other three elements of a prima facie claim of discrimination.  See Nicholson v. West Penn Allegheny Health Sys., No. 06 Civ. 0814, 2007 WL 3120275, at *9 n.5 (W.D. Pa. Oct. 23, 2007), aff'd, 297 Fed. App'x 157 (3d Cir. 2008).

walk, without supporting medical testimony, simply is not sufficient to establish his prima facie

case under the ADA." Douglas v. Victor Capital Group, 21 F. Supp. 2d 379, 392 (S.D.N.Y.

1998); see Ragusa v. Malverne Union Free Sch. Dist., 582 F. Supp. 2d 326, 342 (E.D.N.Y. 2008)

("[T]o raise an issue of fact . . . a plaintiff must provide specific information detailing the nature

and length of the limitation, together with supporting medical evidence regarding the duration

and severity of the impairment's impact on the major life activity at issue.").[9]

Even assuming, arguendo, that Plaintiff had satisfied the first three prongs of the prima

facie case, he has failed to adduce any evidence from which a reasonable factfinder could

conclude that he "suffered an adverse employment action because of his alleged disability."

Ofori-Awuku v. Epic Sec., No. 00 Civ. 1548, 2001 WL 180054, at *3 n.3 (S.D.N.Y. Feb. 23,

2001).

        **(ii)**    **Perceived Disability**

Even where, as here, the record is devoid of evidence (medical or otherwise) that a

plaintiff suffers from, or has a record of suffering from, an impairment that substantially limits a

major life activity, a plaintiff may still be found to be disabled under the ADA, Mitchell, 2003

WL 22705121, at *7, if "the employer considered [him] to be suffering from [a disability] within

the meaning of the [ADA]." Nicholson v. West Penn Allegheny Health Sys., 297 Fed. App'x

157 (3d Cir. 2008) (internal quotation omitted). "An employee can be 'regarded as' disabled in

two ways: '[i] a covered entity mistakenly believes that a person has a physical impairment that

substantially limits one or more major life activities, or [ii] a covered entity mistakenly believes

that an actual, nonlimiting impairment substantially limits one or more major life activities.'"

---

[9]    The Hospital's EEOC Answer, dated May 27, 2008, does not establish Plaintiff's
disability; it merely acknowledges prior to discovery in this case: "Complainant's [EEOC
Complaint] definition that a 'disability' existed pursuant to Federal and State laws." (EEOC
Answer ¶ 3.)

Giordano v. City of New York, 274 F.3d 740, 748 (2d Cir. 2001) (quoting Sutton v. United Air Lines, Inc., 527 U.S. 471, 489 (1999)).[10]

Plaintiff's perceived disability claim under the ADA is dismissed because, among other reasons, he "fails to raise a triable issue of fact that [Defendants] regarded him as disabled." Okoro, 2008 WL 4449386, at *9.[11] The evidence fails even remotely to suggest that Defendants believed that Plaintiff was suffering from a physical impairment which substantially limited a major life activity. See Mitchell, 2003 WL 22705121, at *8. Plaintiff concedes that he returned to work following his surgery "without restriction"; that he was "not limited in any capacity, including his ability to work"; that "he did not inform anyone that he had any disability upon his return to work"; that "he did not request any accommodation of any kind"; and that "no Hospital employee ever said or did anything to lead [him] to believe that the Hospital considered [him] to be disabled or considered his alleged disability when making the decision to terminate his employment." (Defs. Rule 56.1 ¶¶ 9–10, 29; Pl. Rule 56.1 ¶¶ 9–10, 29.) Nor does Plaintiff present evidence that anyone at the Hospital mistakenly believed either that he had a physical impairment that substantially limited any major life activity, or that an actual nonlimiting impairment he had substantially limited a major life activity. See Mitchell, 407 F. Supp. 2d at

---

[10]    Defendants' alleged discriminatory termination of Plaintiff occurred on or before February 1, 2008. (Compl. ¶ 18.) The ADA no longer requires a plaintiff bringing a claim under the 'regarded as' theory, i.e., after January 1, 2009, to show that the defendants believed a major life activity was limited by the perceived impairment. Milholland, 569 F.3d at 566.

[11]    To prove a prima facie discrimination claim of a perceived disability, a plaintiff must show that: "[i] the defendant[s] [are] covered by the ADA"; [ii] plaintiff . . . is regarded as suffering from a disability within the meaning of the ADA"; "[iii] plaintiff was qualified to perform the essential functions of the job, with or without reasonable accommodation; and [iv] plaintiff suffered an adverse employment action because of his . . . perceived disability." Capobianco, 422 F.3d at 56. Because Plaintiff has failed to establish that he was regarded as suffering from a disability within the meaning of the ADA, the Court need not address the other three elements of a prima facie claim of discrimination. See Nicholson, 2007 WL 3120275, at *9 n.5.

239.

Moreover, Plaintiff does not allege – nor does he present any evidence – that he provided
Defendants with any medical records or informed Defendants about any disability within the
meaning of the ADA. See Mitchell v. Nat'l R.R. Passenger Corp., 407 F. Supp. 2d 213, 239
(D.D.C. 2005); (Elfenbein Dep. at 76:7-13 (Q: "Other than them seeing you walking around with
a cane, did you convey this to anyone else [at Bronx Lebanon]?" A: "I didn't tell anyone,
period.").) Plaintiff's allegations that his supervisor, Dr. Phillips, "knew that I had a problem
immediately after the surgery, that required me to use a cane," because "[Dr. Phillips] would call
periodically because he was anxious to find out when I was coming back," (Elfenbein Dep. at
74:10-23), do not, without more, establish that Dr. Phillips or any other Hospital employee
perceived Plaintiff as disabled within the meaning of the ADA. See Mitchell, 407 F. Supp. 2d at
239.

And, Plaintiff's argument that "in the eyes of Defendants, [Plaintiff] has a statutorily
protected disability," because the Hospital acknowledged in its Answer to the EEOC, dated May
27, 2008, that Plaintiff "had a disability under the federal and state laws," (Pl. Opp'n at 10–11),
is unpersuasive. A reasonable factfinder could not conclude from this one sentence of the
Hospital's EEOC Answer – submitted prior to any discovery in this case – that any Defendant
perceived Plaintiff had a physical impairment that substantially limited any major life activity or
an actual nonlimiting impairment that substantially limited a major life activity and terminated
Plaintiff based upon such perception. See Mitchell, 407 F. Supp. 2d at 239.

Even assuming, arguendo, that Plaintiff had satisfied the first three prongs of the prima
facie case, he has failed to adduce any evidence from which a reasonable factfinder could
conclude that he suffered an adverse employment action because of a perceived disability. See

20

Ofori-Awuku v. Epic Sec., No. 00 Civ. 1548, 2001 WL 180054, at *3 n.3 (S.D.N.Y. Feb. 23, 2001); see also supra Section IV(2)(i).

### (3)    State and Local Law Claims

The Court declines to exercise supplemental jurisdiction over Plaintiff's state and local law claims in light of the dismissal of Plaintiff's federal causes of action.  See LaGrande v. Key Bank Nat'l Ass'n, 393 F. Supp. 2d 213, 223 (S.D.N.Y. 2005) ("As there are no longer any claims based on federal law in this action and with due consideration of concerns of judicial economy, convenience and fairness, pursuant to 28 U.S.C. § 1367(c)(3), the Court declines to exercise supplemental jurisdiction over the remaining state law claims."); see also Block v. First Blood Assocs., 988 F.2d 344, 351 (2d Cir. 1993).  Plaintiff's state and local law claims are dismissed without prejudice.  See Tops Mkts., Inc. v. Quality Mkts., Inc., 142 F.3d 90, 103 (2d Cir. 1998).

### V.    Conclusion and Order

For the foregoing reasons, Defendants' motion for summary judgment [#15] is granted in its entirety.  All related motions [## 18, 21, 37] are dismissed as moot.  The Clerk of the Court is respectfully requested to close this case.

Dated: New York, New York
       October 27, 2009

RMB

**RICHARD M. BERMAN, U.S.D.J.**